Brown, District Judge.
In or about January, 1890, tbe respondents issued policies of marine insurance by which they insured the libelant for one year against loss by fire, etc., on the tug D. L. Flanagan, in the “bays and harbor of New York, East and North or Hudson rivers, waters of New Jersey, Long Island sound and shores, and as far as New Bedford, and all inland waters as far south as Norfolk, Virginia, and all waters adjacent, connecting, or tributary to any of the above waters.” The description of the waters and places privileged to be used was in print, except the above clause in italics, which was in writing.
On June 12, 1890, a rider was attached to the policy as follows:
“Permission is hereby given the tug D. L. Flanagan to use port and harbor of Charleston, and to go as far as the jetties at Charleston, but not to cover on trips either way between Norfolk and Charleston.”
*171 On June 16, 1890, at 1:15 A. m., the steam tug left Norfolk, Va., on a trip to Charleston. At about 3:30 a. m. fire was discovered by the second engineer in the boiler room, and in a few moments the fire burst up through the hull, to the serious damage of the tug.
There is a serious conflict in the evidence as to the position of the-tug, whether she was inside or outside of Cape Henry, at the time when the fire was discovered. I do not, however, find it necessary to determine this point, for the reason that there is no doubt that when the fire-broke out the tug was not at Norfolk, nor within the port of Norfolk, but was upon a trip between Norfolk and Charleston; and T am of the opinion that the language of the rider is- so explicit and unambiguous, that it cannot properly be narrowed by legal construction so as to make-the policy cover any part of the trip to Charleston, even while within the inland waters of Chesapeake bay.
It is urged that the rider was intended as an additional privilege, and not to narrow the extent of the previous insurance which would at least cover the inland waters of Chesapeake bay, and the “waters adjacent thereto.” This argument at first impressed me with considerable force. It seems’to me wrong, however, to yield to it. The rider does, in some respects, undoubtedly, extend the scope of the insurance, by giving the privilege of the use of the port and harbor of Charleston, and the waters as far as the jetties. But in granting this additional privilege, which appears to have been without any additional consideration, it was surely competent to the insurers to annex to it such a condition, or exception, as they saw fit. And when they explicitly say, “not to cover on trips either way between Norfolk and Charleston,” it seems to me that the court has no right to hold that the exclusion means anything less, than what the words themselves import, namely, the whole trip from port to port.
If it were necessary, or proper even, to inquire what reason there might be for such an exception, it is quite plain that the conditions involved in the preparation the equipment of the tug for the prosecution of a trip between Norfolk and Charleston, would necessarily be quite different from her equipment and preparation for river, or harbor or inland business. The liability of the tug to accidents within the policy while prosecuting such a trip might be greater, not merely when on the high seas, but at all stages of the voyage. Without regard, however, to the increased risks, it is sufficient to say that the express exception of the rider is,so clear and unambiguous as not to admit, as it seems to me, of any restriction under the,rules of legal construction. On this ground the libels must be dismissed, with costs.